## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| WILLIAM WOODWARD, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.: 18-cv-1015 |
| | ) | **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | **Jury Trial Demanded** |
| CONVERGENT OUTSOURCING INC., | ) ) | |
| Defendant. | ) ) | |
| | ) | |

### INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats. (the "WCA").

### JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

### PARTIES

3.      Plaintiff William Woodward is an individual who resides in the Eastern District of Wisconsin (Walworth County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff debts allegedly incurred for personal, family, or household purposes, namely a personal credit card or unsecured credit line.

5.      Plaintiff is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that Plaintiff allegedly engaged in consumer credit transactions.

6. Defendant Convergent Outsourcing, Inc. ("Convergent") is a debt collection agency with its principal offices located at 800 SW 39th Street, Renton, Washington 98057.

7. Convergent is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Convergent is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Convergent is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and. Wis. Admin. Code Ch. DFI-Bkg 74.

10. Convergent is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about September 15, 2017, Convergent mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "GM Financial." A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter, used by Convergent to collect alleged debts.

14. Upon information and belief, Exhibit A was the first written communication Convergent mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

15. The reverse side of Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

2

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

16. <u>Exhibit A</u> also contains the following representations:

Date: 09/15/2017
Creditor: GM Financial
Client Account #:     7284
Convergent Account #:    2537

Reduced Balance Amount: $8,778.74
            Amount Owed:    $21,946.84
            Total Balance:   $21,946.84

17. <u>Exhibit A</u> states that, as of September 15, 2017, Plaintiff's alleged GM Financial

account had a "Total Balance" of $21,946.84 and a "Reduced Balance Amount" of $8,778.84.

18. <u>Exhibit A</u> additionally states:

Our client has advised us that they are willing to satisfy your account for 40% of your total balance due to satisfy your past balance. The full reduced balance amount must be received in our office by an agreed upon date. If you are interested in taking advantage of this opportunity, call our office within 60 days of this letter. Your reduced balance amount would be $8,778.74. Even if you are unable to take advantage of this arrangement, please contact our office to see what terms can be worked out on your account. We are not required to make this arrangement to you in the future.

19. <u>Exhibit A</u> also contains a payment remittance slip, which states:

---

800-423-9397

Re: William D Woodward

✓ **Select Your Plan:**

☐ **OPPORTUNITY #1 - Lump Sum Reduced Balance Offer of 40%:**
Enclosed is my payment of $8,778.74 (a 60% discount). My account is now satisfied in full.

☐ **OPPORTUNITY #2 – Reduced Balance Offer of 65% & Pay Over 3 Months:**
Enclosed is my first payment of $4,755.15 towards the reduced balance of $14,265.45 (a 35% discount).

☐ **OPPORTUNITY #3 - Spread Your Payments Over 24 Months:**
Enclosed is my first payment of $914.45 towards the balance due of $21,946.84.

If we are calling you in error, please call 855-728-9701 or visit our website at www.convergentusa.com.

Date: 09/15/2017
Creditor: GM Financial
Client Account #:  7284
Convergent Account #:  2537

Reduced Balance Amount: $8,778.74
Total Balance: $21,946.84
Amount Enclosed: US _____

| PLEASE COMPLETE IF PAYING BY CREDIT CARD. | |
|---|---|
| VISA ☐ | MasterCard ☐ |
| CARD NUMBER | EXP. DATE |
| CARDHOLDER NAME | AMOUNT $ |
| CARDHOLDER SIGNATURE | |

If Options 2 or 3 Have Been Selected, Please Enter Monthly

Payment Date and Amount: _____ $_____

3

20.     Exhibit A states three different balances: the body of Exhibit A refers to a "Reduced Balance Amount" of $8,778.84 and a "Total Balance" of $21,946.84, and the payment remittance slip also refers to a "Reduced Balance" of $14,265.45.

21.     On its face, Exhibit A is confusing and misleading as to what happens if a consumer tenders a $4,755.15 payment pursuant to Opportunity #2 but does not make any other payments.

22.     Exhibit A characterizes Opportunity #2 as making a "Reduced Balance Offer."

23.     Opportunity #2 purports to allow the consumer to pay the reduced balance over three months.

24.     Exhibit A implies to the consumer that a $4,755.15 payment "towards the reduced balance of $14,265.45" pursuant to Opportunity #2 not only credits the account but actually triggers a reduction in the balance itself, from the Total Balance, $21,946.84 to the Reduced Balance, $14,265.45.

25.     After making the $4,755.15 payment "towards the reduced balance of $14,265.45," the new "reduced balance" of the account would be $9,510.30.

26.     However, it is unclear whether the "reduced balance" would revert back to the "Total Balance" in the event that the consumer does not pay the "full reduced balance amount" over three months and it is unclear whether the representation that the consumer may "Pay over 3 Months" means that the consumer may pay over three months from the date Exhibit A was mailed or three months from the date of the first payment.

27.     Exhibit A exacerbates this confusion by instructing the consumer that, "If Options 2 or 3 Have Been Selected, Please Enter Monthly Payment Date and Amount: _____ $ _____."

4

28.     The statement in the body of <u>Exhibit A</u> that "the full reduced balance amount must be received in our office by an agreed upon date" does not cure this confusion because the nature of an "agreed upon date" is inherently open-ended.

29.     Moreover, it is unclear whether the statement that "the full reduced balance amount must be received in our office by an agreed upon date" even applies to Opportunity #2. The body of <u>Exhibit A</u> makes no reference to Opportunity #2 and expressly states "your reduced balance amount would be $8,778.84."

30.     The "reduced balance" installment payment amounts and due dates are, by definition, material terms of the offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (in the context of settlement offer expiration dates, "ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments violated the FDCPA).

5

31.     Upon information and belief, Opportunity #2 is a settlement offer, and any purported balance "reduction" would be wholly illusory if the consumer tendered a $4,755.15 payment but did not make any additional payments within three months.

32.     Upon information and belief, if the consumer tendered a $4,755.15 payment but did not make any additional payments, the "reduced balance" would revert to the "Total Balance," less a $4,755.15 credit for the payment received. But Exhibit A does not communicate that prospect to the consumer.

33.     Exhibit A is also unclear as to whether Convergent purports to offer to settle the account or has actually reduced the balance of the account, in which case paying of the "full amount" offered would actually pay the account in full.

34.     In the context of credit reporting, there is a difference between resolving an account by paying the account in full and resolving the account by settling it in full.  The unsophisticated consumer would be confused as to whether the account would be reported as "paid in full" or "settled in full."  *See e.g., Molton v. Experian Info. Solutions, Inc.*, 2004 U.S. Dist. 659, at *13 (N.D. Ill. Jan. 21, 2004); *Nielsen v. E*Trade Mortg. Corp.*, 2015 U.S. Dist. LEXIS 39781, at *4-5 (E.D. Mich. Mar. 30, 2015); *Shaw v. Experian Info. Solutions, Inc*., 2016 U.S. Dist. LEXIS 134991, at *31-32 (S.D. Calif. Sept. 28, 2016); *Keller v. Trans Union LLC*, 2017 U.S. Dist. LEXIS 283, at *7-8 (D. Ariz. Jan. 3, 2017).

35.     A delinquent account that is "Paid in full" has a less negative impact on a consumer's creditworthiness than a settled account does. Thus, all other variables being equal, a consumer who pays off a collection account in full would end up with a higher "credit score" than one who settles the same account.

6

36. Upon information and belief, the "Reduced Balance Amount" stated in <u>Exhibit B</u> is actually an offer to settle the account, not a "reduced balance" by which the consumer may pay the account in full.

37. Upon information and belief, if the consumer paid the "full reduced balance amount," Convergent, and/or the creditor, would report the account to consumer reporting agencies as "settled in full" rather than "paid in full."

38. Upon information and belief, Convergent uses the phrase "reduced balance amount" to confuse consumers and induce them into paying this amount under the assumption that Convergent, and the creditor, will report the account to consumer reporting agencies as "paid in full."

39. Moreover, while the debt validation notice is on the reverse side of <u>Exhibit A</u>, the face of the payment remittance slip in <u>Exhibit A</u> contains the following:

> If we are calling you in error, please call 855-728-9701 or visit our website at www.convergentusa.com.

40. The instruction on the face of <u>Exhibit A</u> that the consumer should contact Convergent by telephone "if we are calling you in error" is false, deceptive, and misleading to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice on the reverse side of <u>Exhibit A</u> and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing.\

41. 15 U.S.C. § 1692g states:

> **(a) Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

7

…

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

42. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

43. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> **(b) Disputed debts**
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

44. The most likely reasons a consumer may believe Convergent is calling her "in error" are that she has already paid the debt or never owed it in the first place, which are the

8

typical FDCPA disputes and the primary reasons Congress adopted the debt validation procedure specified in 15 U.S.C. 1692g. *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at \*22 n. 6 ("Congress enacted the FDCPA to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.") (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).

45.     <u>Exhibit A</u> confusingly directs the debtor to notify Convergent about these disputes by telephone, without informing the consumer that the dispute must be communicated in writing in order to trigger verification. *See Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at \*9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at \*16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS

9

25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990).

46.     Convergent's instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled. *See Clark v. Absolute Collection Serv.,* 741 F.3d 487, 491 (4th Cir. 2014); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

47.     The overshadowing effect is compounded because Convergent provides the validation notice on the reverse side of the letter but the offending language is on its face. *See e.g., Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990) ("The invitation to telephone unaccompanied by any warning that the notice must be in writing to be effective obscures the dispute validation notice required by 15 U.S.C. § 1692g.").

48.     The overshadowing effect is also compounded by the general confusion wrought by Convergent's "Reduced Balance" offers on the face of <u>Exhibit A</u>, which would prompt the consumer to telephone Convergent to ask how much, and when, he would have to pay for each installment payment in Option 2. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment."); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

10

49.     Exhibit A contradicts, overshadows, and confuses the 15 U.S.C. § 1692g notice.

50.     Plaintiff was confused and misled by Exhibit A.

51.     The unsophisticated consumer would be confused and misled by Exhibit A.

52.     Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

53.     Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to obtain counsel on the consequences of Exhibit A.

### THE FDCPA

54.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

55.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir.

1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

56. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

57. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher,* 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989)

58. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers'

allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

13

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

59.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

60.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

61.     15 U.S.C. § 1692e(2)(a) specifically prohibits:  "The false representation of—the character, amount, or legal status of any debt."

62.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

63.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

64.     15 U.S.C. § 1692g(a) states:

> a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
> . . .
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

65.     15 U.S.C. § 1692g(b) requires that these disclosures must be made in a non-confusing manner and prohibits debt collectors from communicating with the debtor in ways that overshadow or are inconsistent with the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

66.     The failure to make these disclosures in a non-confusing manner *per se* violates the FDCPA and there is no materiality inquiry necessary. *Janetos*, 825 F.3d at 324.

### The WCA

67.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

15

68.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

69.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

70.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

71.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

72.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

73. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

74. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

75. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

76. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

77. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

78. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

79. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

17

80.     The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer.  *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

81.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82.     <u>Exhibit A</u> contains confusing and misleading settlement offers.

83.     <u>Exhibit A</u> is confusing and misleading as to whether payment of the "reduced balance amount" would result in the account being reported to consumer reporting agencies as "Paid in Full" or "Settled in Full."

84.     <u>Exhibit A</u> is confusing and misleading as to whether the "reduced balance" would revert back to the "total balance" in the event a consumer made the initial payment stated in Opportunity #2 but made no further payments.

85.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, and 1692g(a)(1).

18

## COUNT II - FDCPA

86.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

87.     Exhibit A directs consumers to contact Convergent by phone "if we are calling you in error."

88.     Exhibit A is misleading to the unsophisticated consumer because a consumer who wishes to trigger her verification rights must communicate her dispute in writing.

89.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT III - WCA

90.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91.     Exhibit A misleads the unsophisticated consumer as to how to effectively exercise her rights to dispute the debt, and effectively mislead her into foregoing those rights.

92.     Exhibit A contains misleading statements as to the balance of the account and false threats as to how the debt will be reported.

93.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), 427.104(1)(L).

## COUNT V - WCA

94.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

95.     Convergent is a licensed Collection Agency.

96.     Exhibits A violates the FDCPA.

97.     Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

98.     Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters in the form represented by Exhibit A to the complaint in this action, (c) attempting to collect a debt incurred for personal, family or household purposes, (d) mailed July 3, 2017 and August July 3, 2018, inclusive, (e) not returned by the postal service.

99.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

100.     There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant complied with the FDCPA and the WCA.

101.     Plaintiff's claims are typical of the claims of the members of each class.  All are based on the same factual and legal theories.

102.     Plaintiff will fairly and adequately represent the interests of the members of each class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

103.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

104.     Plaintiffs hereby demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated: July 3, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com
